IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DONALD WAYNE WARWICK                                                    PLAINTIFF

        v.                Civil No. 04-2208

NURSE CREED, R.N., Sebastian County
Detention Center; DEPUTY TEAGUE; and
CAPTAIN MIKE CONGER, Jail Administrator,
Sebastian County Detention Center                                       DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Donald Wayne Warwick brings this pro se civil rights action under 42 U.S.C. § 1983. Warwick contends that his constitutional rights were violated while he was detained at the Sebastian County Detention Center on charges of violation of his parole.

On May 10, 2005, the defendants filed a motion for summary judgment (Doc. 17). By order entered on May 31, 2005, Warwick was directed to complete, sign, date and return by June 24, 2005, an attached questionnaire that would serve as his response to the defendants' motion. (Doc. 20.) On July 28, 2005, Warwick's response was filed. (Doc. 21.) The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

### I. Background

Warwick was taken into custody on or about July 14, 2004, on charges of violating his parole. Upon intake, Warwick had an account balance of $91.00. (Doc. 21 at ¶¶ 1-2.) On August 1, 2004, he submitted a Medical Charge Sheet, stating that he had been bitten by a spider on July 30, 2004, and that he needed medical attention. On August 2, 2004, Warwick was seen by a nurse who provided him "triple-antibiotic cream and 2-200mg Ibuprophin [sic] three X a day." (Doc. 1.) Warwick contends that the Ibuprofen "was not sufficient to help with pain, so

to avoid more stomach problems, I refused them." (Doc. 21 at ¶ 5.) The nurse told Warwick that in order to see the doctor, he would need to have someone place $60.00 in his account. (Doc. 21 at ¶ 6.) Warwick requested to be taken to the Veterans' Administration hospital, but the nurse told him that the VA would not see him while he was incarcerated. (Doc. 21 at ¶¶ 7-8,) Warwick told the nurse that he had a hearing scheduled for that week, and he believed that he might be released since he had no new charges and only minor infractions. The nurse told him that she would follow up with Warwick if he was unable to be released. She also ordered that he be moved to a "bottom cell" because he was having difficulty negotiating the stairs to received meals. (Doc. 1; Doc. 21 at ¶¶ 7, 9.) Warwick alleges that on one occasion, defendant Deputy Teague would not let other inmates bring Warwick a food tray and Warwick had to "negotiate the stairs with [his] leg in so much pain [he] could not put pressure on leg to walk had to hop which jarred area and caused pain." (Doc. 7 at ¶ 2.) Warwick admits that he never filed a grievance about Deputy Teague's actions. (Doc. 21 at ¶ 27.)

On August 4, 2004, Warwick filled out an inmate grievance, claiming that he had been bitten by a spider on July 30 and that he had not received proper medical care. He stated that he had seen the nurse on August 2 and that the nurse had asked if there was anyone who could put $60.00 on his books to pay for a doctor's visit. Warwick again requested to see the doctor or to be released to travel to the VA hospital. (Doc. 21 at ¶ 11.) The answer to this grievance stated that the nurse had provided Warwick with antibiotic cream but that he had sent it back to her. (Doc. 19 at Ex. 3.) Warwick admits that he "used it (the antibiotic cream) the first time but 12 hrs later when 2nd arrived, I refused because it was a topical and did nothing for the infection or eating away of tissue down inside." (Doc. 21 at ¶ 12.)

AO72A
(Rev. 8/82)

On August 5, Nurse Reed noted on a Medical treatment report that Warwick had (1) refused to take the prescribed medications for the spider bite, (2) had used the prescribed medications only twice, and (3) had refused further medication and had them returned to the nurse. (Doc. 19 at Ex. 3.) Warwick responds that he "received med, but when I told deputy they weren't helping he decided to return them and I said you might as well." (Doc. 21 at ¶ 13.)

According to Warwick, "on 08-07-04 when parole officer never showed up, [he] filled out another medical request and went to see the nurse [that] same day." After the nurse examined his leg, she called the doctor to see if he could see Warwick. The doctor told the nurse to "give [Warwick] a shot consisting of very strong antibiotic and laticane, which she did and said [Warwick] would get to see the Dr. on 08-11-04, which [he] did." After the doctor examined Warwick, the doctor directed the nurse to give Warwick three more injections. "Over the period of three days, [Warwick] rec'd the three injections and antibiotics and 800 mg Ibuprophin [sic] 4X a day for the bite." (Doc. 1.) Warwick alleges that due to the defendants' failure to "act more promptly," he now has a scar on his leg and suffered "much unnecessary pain." (Doc. 21 at ¶ 29.)

Warwick contends that on August 18, 2004, exterminators came into the CD pod to fumigate, but that "they did not spray the cells only inlets to water pipes from day room and they just opened door, pointed nozzle, squeezed trigger, and moved on to next door." On August 21, 2004, while sleeping on the floor due to jail overcrowding, Warwick awoke to find a spider crawling on his leg which he kept and showed to a jail deputy who stated he would inform a supervisor. (Doc. 1.) Warwick alleges that Defendant Conger never met with Warwick or showed concern about his condition or the lack of safety to the inmates. (Doc. 7 at ¶ 2; Doc. 21

at ¶ 30.)

Warwick was released from the Sebastian County Detention Center on September 9, 2004. According to the defendants, upon his release Warwick owed $253.24 for the treatment and medication he received while detained. (Doc. 19 at ¶ 21 and Ex. 2.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the

AO72A
(Rev. 8/82)

United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

**Failure to Exhaust Administrative Remedies**

"No action shall be brought with respect to prison conditions under [federal law] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). At the time Warwick filed this complaint, he was detained at the Sebastian County Detention Center. (Doc. 1.) Among his complaint allegations, he alleges that Deputy Teague would not allow other inmates to bring him food and required that he "negotiate" the stairs which caused harm and pain to his leg. (Doc. 7 at ¶ 2.) Warwick admits that he never filed a grievance about this because he could not obtain grievances directly from jailers and he never remembered to pick up a grievance when he was in the office. (Doc. 21 at ¶ 27.)

Exhaustion of administrative remedies is a prerequisite to bring a civil action. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (administrative exhaustion is prerequisite to § 1983 prison-conditions lawsuit even if administrative remedies are not plain, speedy, and effective, and relief inmate seeks is not available); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("If exhaustion was not completed at the time of filing [the complaint], dismissal is mandatory")*; Lyon v. Vande Krol*, 305 F.3d 806 (8th Cir. 2002) (en banc) (plaintiff's

AO72A
(Rev. 8/82)

subjective belief that there was no point in pursing administrative remedies is irrelevant; where procedure is available, inmate must avail himself of that procedure). Even if Warwick had exhausted his administrative remedies on some of his claims, this is insufficient, as he must have exhausted his remedies as to all of the claims brought in his complaint. *See Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2002) (per curiam) (holding that "[w]hen multiple prison condition claims have been joined ... the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims"). Exhaustion of administrative remedies is required in order for the detention center to have the first opportunity to address the concerns and grievances of prisoners. *See Porter*, 534 U.S. at 525 ("Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.") Therefore, dismissal of the complaint would be appropriate.

**Deliberate Indifference to Medical Needs**

Considering the claims raised by the plaintiff, granting of the defendants' motion for summary judgment is proper. Warwick contends that Nurse Creed was deliberately indifferent to his serious medical needs in the treatment of his spider bite.

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate*

of *Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Warwick claims to have been bitten by the spider on July 31. He submitted a medical

request on August 1, and on August 2, he was seen by a jail nurse (presumably defendant Nurse Creed) who provided Warwick with triple antibiotic cream and Ibuprofen, which was to be taken three times per day. Warwick on his own determined that these treatments would be ineffective, so after one use of the cream, he began refusing both the cream and the Ibuprofen and requested to see the doctor or to be released to visit the VA hospital for treatment.

On August 7, Warwick submitted another medical request, and he saw the nurse that day. She then contacted the doctor, who instructed the nurse to give Warwick an injection of an antibiotic and laticane. Warwick received this injection. He was also scheduled for an August 11 appointment with the doctor. After Dr. Tinsmen examined him on August 11, Dr. Tinsmen prescribed three more injections, which Warwick received.

Warwick's claims of deliberate indifference against Nurse Creed amount to no more than a disagreement with the treatment he received. Warwick was seen promptly after each medical request and was given treatments for his condition. His mere disagreement with Nurse Creed's initial prescription of topical antibiotic cream does not state a constitutional violation. As for Warwick's claim that he was required to have $60.00 placed on his books prior to seeing the doctor, this claim is belied by the fact that he did see the doctor on August 11 without first placing such monies in his account and the fact that he was released from the Sebastian County Detention Center while still owing $253.24 for the treatment and medication he received while detained.

Further, jail officials may require inmates to pay for the medical treatments they receive while they are detained. The Eighth Amendment's prohibition against cruel and unusual

AO72A
(Rev. 8/82)

punishment requires prisons to provide basic medical care to inmates, but does not require that medical care be provided at no cost. *See Estelle v. Gamble,* 429 U.S. 97, 103 (1976); *Reynolds v. Wagner,* 128 F.3d 166, 173-174 (3d Cir.1997).

Regarding defendant Deputy Teague, the plaintiff has provided no proof that Deputy Teague was aware of his medical condition. Further, upon request, plaintiff was reassigned to a "bottom cell" by the nurse, so the requirement that he use the stairs was minimal. Plaintiff has failed to show the Deputy Teague was deliberately indifferent to his serious medical needs.

As to plaintiff's claim that defendant Captain Conger did not show compassion or interest in his medical condition, such a claim does not support a constitutional violation.

The defendants' motion for summary judgment as to the claim that they were deliberately indifferent to the plaintiff's serious medical needs should be granted.

**Conditions of Confinement**

Plaintiff also alleges that he was detained in unconstitutional conditions of confinement due to the manner in which the detention center was fumigated. He states that those responsible for the fumigation did not apply the treatments to the locations that he believes would have been most effective in treating any infestation problems. This claim is, at most, a claim of negligence, and such does not violation the Constitution. *See Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

### IV. Conclusion

Therefore, I recommend that defendants' motion (Doc. 17) for summary judgment be granted and this case be dismissed with prejudice.

AO72A
(Rev. 8/82)

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of January 2006.

                                                  **/s/ Beverly Stites Jones**
                                                 _____
                                               HON. BEVERLY STITES JONES
                                               UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)